# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY TODD SIPES, | Case No. 1:24-cv-00622-JLT-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| CORCORAN CALIFORNIA STATE PRISON, | |
| Respondent. | |

Petitioner Jeffrey Todd Sipes is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

**I.**

**BACKGROUND**

Following a bench trial in the Fresno County Superior Court, Petitioner was convicted of forcible lewd or lascivious acts against a child under the age of fourteen years (count 3), nonforcible lewd or lascivious acts against a child under the age of fourteen years (count 4), forcible rape (count 5), and sexual penetration of a minor fourteen years of age or older (count 9). Prior to trial, Petitioner pleaded no contest to possession of child pornography (count 1) and possession of child pornography with aggravating circumstances (count 2). People v. Sipes, No. F081591, 2022 WL 334372, at *1 (Cal. Ct. App. Feb. 4, 2022). Petitioner was sentenced to an aggregate imprisonment term of twenty-four years and eight months. Id.

1

On February 4, 2022, the California Court of Appeal, Fifth Appellate District, affirmed the judgment. Sipes, 2022 WL 334372, at *12. On April 20, 2022, the California Supreme Court denied the petition for review. (LD[1] 22.) On December 16, 2022, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (LD 25.) On July 12, 2023, the California Supreme Court ordered the Director of the Department of Corrections to show cause before the Fresno County Superior Court why relief should not be granted. (LD 26.) On September 12, 2023, the Fresno County Superior Court granted the petition and vacated Petitioner's conviction on count 2.[2] (LD 24.)

On May 28, 2024, Petitioner filed the instant petition for writ of habeas corpus, challenging the sufficiency of the evidence to show the statute of limitations on counts 3, 4, 5, and 9 was tolled. (ECF No. 1 at 5.[3]) On July 18, 2024, Respondent filed an answer. (ECF No. 9.) To date, no traverse has been filed, and the time for doing so has passed.

## II.

## STATEMENT OF FACTS[4]

> Upon receiving a tip from Google, processed through the National Center for Missing and Exploited Children, law enforcement officers with the Central California Internet Crimes Against Children (ICAC) task force linked defendant to potential possession of child pornography. The task force, which included, among others, Fresno Police Officer David Wilkin and Fresno County Sherriff's Deputy Kenneth Kalar, executed a search warrant at defendant's residence on April 17, 2017.
>
> Discovered among defendant's various electronic devices in his home were 298 images depicting child pornography, 32 videos containing child pornography, and over 400 photographs of young female children taken either from defendant's residence or in and around a Walmart store.
>
> Officer Wilkin and a second detective interviewed defendant during the search of his residence, after which defendant was arrested. During the interview, defendant admitted to officers he had a sexual interest in viewing the child pornography. After the interview, Wilkin made attempts to contact defendant's daughter, who

---

[1] "LD" refers to the documents lodged by Respondent on July 12, 2024. (ECF No. 8.)
[2] Petitioner pleaded no contest to count 2, a violation of California Penal Code section 311.11(c), on advice of counsel. However, section 311.11(c) provides an alternate penalty provision and is not a separate substantive offense. The superior court found that Petitioner was prejudiced by the deficient performance of trial counsel.
[3] Page numbers refer to the ECF page numbers stamped at the top of the page.
[4] The Court relies on the California Court of Appeal's February 4, 2022 opinion for this summary of the relevant facts and procedural history. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

was a minor, to determine whether defendant had committed any contact sex offenses against her. In doing so, Wilkin telephoned defendant's former wife, Karen, whom Wilkin thought was the mother of defendant's minor child.

Karen explained to Wilkin that her daughter, Jane Doe, was not defendant's child; she was not defendant's ex-wife with whom defendant shared a child. Jane Doe was born in 1981 and had lived with Karen and defendant while they were a couple. Through Karen, Wilkin was put in touch with Jane Doe, and he interviewed Jane Doe in April 2017. Jane told Wilkin she remembered several instances when defendant had molested her as a child.

Defendant was ultimately charged with two counts of child pornography possession under section 311.11(a) and (c)(1), and seven additional sex offenses. Prior to trial, defendant pleaded no contest to the two child pornography possession counts, and the remaining sex offense charges were tried without a jury.

Details about the child pornography offenses were admitted at trial under Evidence Code section 1108 as evidence of defendant's propensity to commit the earlier sex offenses against Jane and to corroborate Jane's allegations of abuse under section 803, subdivision (f) (section 803(f)). The trial exhibits included 12 of the 298 images depicting child pornography; 12 of the 32 videos depicting child pornography; six images of small female children photographed from a school bus, 21 images of child "erotica" that appeared to be taken at a retail store, and various images taken from inside defendant's residence of children outside the residence. The child pornography images and video exclusively portrayed minor, female subjects most of whom were prepubescent. The ages of female children on the video exhibits ranged from approximately six years old to 10 years old, and several videos depicted the vaginal penetration of the victims by an adult male penis and showed the victims orally copulating a male penis.

According to Jane Doe, she lived with her mother and defendant from the time she was four or five years old until she was 16 years old, at which time her mother and defendant separated and subsequently divorced. While the three of them lived together, no one else lived with them; but they moved frequently. Jane Doe described several times when defendant was physically abusive. When she was eight or nine years old, he hit her in the face; he would often spank her with wire or plastic hangers or a belt. The belt left marks on the back of her legs, and she remembered welts and bruises. She remembered being very scared of defendant during her childhood, and she saw him hit her mom on at least two occasions that she could remember.

When she was four or five years old, defendant came into her bedroom and began touching her leg and her butt. Her next memories of sexual abuse related to when she was in the fourth grade and about 10 or 11 years old; they were living at an apartment on Villa Avenue. During one occasion, she was asleep in her room at night when defendant woke her up by pulling down the pajama pants Jane was wearing. He touched her vagina for a bit, and then he left her room. This happened several times when she was in fourth grade through seventh grade, and it seemed like more abuse occurred each time—at first, he would just touch her vagina, but on subsequent occasions he inserted his fingers. She remembered a separate incident while living at that apartment when defendant checked her head for lice while he was standing naked in front of her.

When she was about 13 years old, defendant started putting his mouth on her vagina after the family moved from the Villa Avenue apartment to a house. This occurred while she was sleeping, and she was awakened by him placing his mouth on her. On these occasions, she had been sleeping on her side and her pajama bottoms had been pulled down. When she was 15 years old, she remembered an episode where he put his penis on her vagina and then partially inserted it. That too began while she was sleeping, and she awoke to find defendant touching her vagina. He penetrated her vagina with his penis on more than one occasion, but not more than five times. She also recalled him putting his fingers inside her vagina when she was 15 years old, but she could not recall if this was separate from the time when he inserted his penis partially into her vagina. She could not recall how many times defendant came into her room while she was sleeping and sexually assaulted her—it was more than 10 times—but she specifically recalled four instances.

Jane never told her mother what defendant was doing. She remembered a disturbance between her mother and defendant at one point in her childhood, but she did not recall her mother ever kicking defendant out of the home or that defendant had ever come into her room naked. She could not recall whether defendant was naked when he molested her.

According to Karen, Jane's mother, Karen and defendant started dating in 1982 or 1983, they were married in 1988, and their divorce became final in 1999. Defendant was physically abusive with Karen and her daughter during the time they all lived together. She recalled him hitting Jane on the legs and butt with a belt.

Defendant would frequently stay up late after Karen and Jane had gone to bed. During one night when Jane was about 11 or 12 years old, from her bedroom Karen heard defendant in the bathroom, she thought he was "getting stoned," and then she saw him peeking into Jane's room—defendant was naked. She saw him walk into Jane's room, so she got up and followed him. Jane appeared to be asleep, but defendant was touching Jane's arm and saying something Karen could not hear. When Karen started asking defendant what he was doing, he jerked around and said Jane was having a bad dream. Karen accused defendant of touching Jane, they got into a huge fight, and she kicked defendant out of the house. Someone in the apartment complex called the police—it was not Karen— and two police officers came to the apartment. She told the officers she and defendant had a fight and defendant had left, but she did not tell them anything about seeing defendant naked in Jane's bedroom—she was too embarrassed. He was probably gone from the apartment for about two weeks. Defendant convinced her that he had done nothing wrong; she had no money, so she continued the relationship with defendant.

Karen and Jane's paternal grandmother were involved in a custody dispute regarding Jane when Jane was young. Jane's grandmother had some weekend custody, and Karen could recall being accused by the grandmother of abuse, and Child Protective Services would show up at Karen's house frequently. Karen remembered telling Wilkin about prior allegations of sex abuse made against family members. She told Wilkin that defendant had accused someone of placing a foreign object in Jane Doe's vagina—he was blaming Jane's grandmother or her cousin. She never heard Jane complain about being molested by her grandmother or her grandmother's boyfriend, Carl.

4

Jane herself could not recall abuse by Carl, nor could she remember talking to her paternal grandmother about anything related to abuse.[5]

Defendant's biological daughter testified on his behalf. She had regularly stayed with defendant two or three weekends per month until he was arrested in 2017; he had a reputation for honesty, and he was never physically violent or abusive. Defendant's mother and sister also testified on his behalf.

Defense expert Dr. Richard Blak met with defendant and evaluated his mental state related to the sexual offenses alleged; he reviewed case-specific material, including defendant's police interview. He opined defendant has a "pedophilia orientation or a tendency to engage in pedophilic behavior."

Defendant testified on his own behalf. He confirmed he had started dating Jane's mother in 1983 when Jane was about two years old. He took on the role of her father, and was involved in her upbringing until she was 14 or 15 years old. He and Karen stopped dating before Jane graduated from high school. Karen invited defendant to Jane's high school graduation, which he attended.

He recalled Karen was involved in custody disputes with Jane's grandmother, and the grandmother obtained visiting rights every other weekend. He testified Karen told him on one occasion that Jane's grandmother used a shampoo bottle on Jane's private parts, and he advised her to report it to the police, which she did. Jane told police that her grandmother's boyfriend, Carl, had placed his finger in her vagina. The visitation with the grandmother stopped for a while, but then resumed.

Defendant denied ever being nude in Jane's room. He acknowledged he had disciplined Jane at times, but he never instigated any corporal punishment. He and Karen broke up and separated several times. He denied ever abusing Karen or Jane physically, although he acknowledged name-calling and instances of pushing and shoving occurred.

Defendant explained he was a school bus driver from approximately 1998 until 2017, when he was arrested. He had taken photos of young girls on a number of occasions when the children would go on field trips and the kids would pose for pictures. He also took pictures from the inside of his home, but some photos were also taken by his daughter or her friends. He admitted taking some of the photos in public, perhaps in a grocery store.

While he acknowledged there were a lot of pictures of young girls engaged in sex acts on his computers, he never masturbated to the images. He believed he developed a sickness as it relates to viewing and watching those images, but he denied having a sexual interest in children. Although he had accessed the pornography on his computer since about 2012 or 2013, he reiterated he had no sexual attraction to children—he could not explain why he looked at the

---

[5] After Jane Doe's trial testimony, the prosecutor moved to dismiss counts 6, 7, and 8 based on insufficiency of evidence, which the court granted. The prosecutor also moved to amend the second amended information as follows: on count 3, the prosecutor requested to amend the date range alleged from "January 20, 1991[,] through January 19, 1992" to read "January 20[,] 1991, through January 19, 1994"; on count 5, the prosecutor sought to delete the words "for the first time" alleged at the very end of the count. Over defense counsel's objection, the court granted these amendments.

5

> pornography. He was not being truthful with Officer Wilkin during the interview—he did not get aroused while viewing child pornography.

Sipes, 2022 WL 334372, at *2–4 (footnotes in original).

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Fresno County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 576 U.S. 257, 268–69 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

In his sole claim for relief, Petitioner challenges the sufficiency of the evidence to show the statute of limitations on counts 3, 4, 5, and 9 was tolled. (ECF No. 1 at 5.) Respondent argues that Petitioner raises additional allegations that renders the claim unexhausted and that both the exhausted and unexhausted versions of this claim fail to state a federal question. (ECF No. 9 at 8.)

This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim was also raised in the petition for review, which the California Supreme Court summarily denied. As federal courts "look through" summary denials and review "the last related state-court decision that does provide a relevant rationale," Wilson, 138 S. Ct. at 1192, this Court will examine the decision of the California Court of Appeal.

In denying Petitioner's claim, the California Court of Appeal stated:

**I. Corroborating Evidence Was Sufficient to Support Tolling**

Pursuant to section 800, the applicable statute of limitations for each of the sex offenses alleged in counts 3, 4, 5 and 9 was six years.[6] Counts 3, 4, 5, and 9 were alleged to have occurred between 1991 and 1997, but the original felony complaint was not filed until April 21, 2017.

**A. Background**

The prosecution alleged the statute of limitations period was tolled under section 803(f). The second amended information alleged Jane was under the age of 18 years at the time of the offenses, she reported the offenses on April 18, 2017 (after she was 21 years old), and the criminal complaint was filed within one year of that date. The information also alleged independent evidence corroborated Jane's allegations: (1) Jane's mother witnessed defendant in the vicinity of Jane's room completely naked; and (2) defendant possessed child pornography in violation of section 311.11.

Prior to trial, defendant pleaded no contest to the two child pornography offenses under section 311.11. Details about those convictions, including the nature and amount of that pornography, were admitted under Evidence Code section 1108 as evidence of defendant's propensity to commit the earlier sex offenses and as evidence relevant to corroborate Jane's allegations under section 803(f)(2)(C).[7]

---

[6] Pursuant to section 800, "[e]xcept as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more or by imprisonment pursuant to subdivision (h) of Section 1170 for eight years or more shall be commenced within six years after the commission of the offense."

[7] Pursuant to Evidence Code section 1108, subdivision (a), "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." A sexual offense within the meaning of Evidence Code section 1108, subdivision (a), includes any conduct proscribed by Penal Code section 311.11, among other statutes. Notably, the plain language of Evidence Code section 1108 "does not limit evidence of uncharged sexual offenses to those committed *prior* to the charged offense." (*People v. Medina* (2003) 114 Cal.App.4th 897, 902.) Because Evidence Code section 1108 broadly refers to the "commission of another sexual offense," this "strongly suggests that evidence of an uncharged sexual offense committed after the charged offense is within the scope of [Evidence Code] section 1108." (*People v. Medina, supra*, at p. 902; see *People v. Cordova* (2015) 62 Cal.4th 104, 133 ["evidence of subsequent crimes may bear on a defendant's character at the time of the charged offense"].)

Following the bench trial, the court made the following findings: (1) Jane Doe was under the age of 18 years as it relates to counts 3, 4, 5, and 9; (2) Jane Doe first reported those sexual assault allegations to law enforcement on April 18, 2017; (3) a criminal complaint regarding those allegations was filed within one year of that report; and (4) each of the acts described in counts 3, 4, 5 and 9 involved substantial sexual conduct as defined in section 1203.066, subdivision (b).

As for the corroborating evidence requirement under section 803(f)(2)(C), the court found the prosecution satisfied its burden of proof. Specifically, the court concluded there was clear and convincing independent corroboration of Jane's allegations. The court found Karen's testimony about defendant being naked in Jane's bedroom on one occasion corroborated Jane's allegations of molestation; and defendant's subsequent possession of child pornography corroborated Jane's allegations in that it established defendant's later interest in prepubescent female children, and the acts depicted in that pornography corresponded to the acts alleged by Jane.

On appeal, defendant argues Karen's testimony and the subsequent child pornography possession evidence was insufficient to clearly and convincingly corroborate Jane's allegations; the statute of limitations, therefore, could not be tolled under section 803(f), and counts 3, 4, 5 and 9 must be reversed as time barred.

### B. Corroboration Requirement Supported by Substantial Evidence

### 1. Section 803

If a pleading is barred by the applicable statute of limitations, the prosecution must allege facts that toll the limitation period. (*People v. Crosby* (1962) 58 Cal.2d 713, 724.) Pursuant to section 803(f), an expired statute of limitations period may be tolled under particular circumstances. A criminal complaint may be filed within one year of a police report for certain sexual offenses, such as violations of section 288, 261, and 289, which are at issue here, that were committed against victims when they were less than 18 years old. (§ 803, subd. (f)(1).) For tolling to apply under these circumstances, the following criteria must be established: (1) the limitations period specified in sections 800, 801, or 801.1, whichever is later, has expired (§ 803, subd. (f)(2)(A)); (2) the crime involved substantial sexual conduct as described in section 1203.066, subdivision (b), excluding masturbation that is not mutual (§ 803, subd. (f)(2)(B)); and (3) there is independent evidence that corroborates the victim's allegations (§ 803(f)(2)(C)).

If the victim is 21 years of age or older at the time of the report, section 803(f)(2)(C) states that "the independent evidence shall clearly and convincingly corroborate the victim's allegation." Further, "[e]vidence shall not be used to corroborate the victim's allegation if that evidence would otherwise be inadmissible during trial" (§ 803, subd. (f)(3)), and "[i]ndependent evidence excludes the opinions of mental health professionals" (*ibid.*).

### 2. Standard of Review

"When a defendant argues on appeal that there was no independent evidence clearly and convincingly corroborating the victim's allegation, [the reviewing court's] task is to determine whether there is substantial evidence corroborating the allegations. [Citation.] '[T]he corroboration does not have to corroborate each

allegation in the criminal pleading, only the "victim's allegation." (§ 803, subd. [(f)](2)(B).) ... Further, the corroboration does not have to be sufficient to support a *conviction.*' " (*People v. Smith* (2011) 198 Cal.App.4th 415, 427–428, citing & quoting *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 681, 683 (*Ruiloba*).)

To determine whether the record shows substantial evidence, "we apply the normal substantial evidence standard of review, regardless of the burden of proof in the trial court." (*Ruiloba, supra*, 131 Cal.App.4th at p. 682.) Under this standard, the evidence must be viewed in the light most favorable to the factfinder's findings. (*Ibid.*)

### 3. Analysis

Defendant argues that, even crediting Karen's testimony that she found him naked in Jane's room on a single occasion, that fact is not sufficient to corroborate Jane's allegations because there was no evidence defendant harbored any lewd intent during that episode. Defendant contends the fact that he was naked, by itself does not support such an inference, and there was no evidence he had an erection or was touching Jane in a sexual manner. Rather, defendant maintains, the incident described by Karen is "completely consistent" with the normal concern a parent would have upon hearing a child and checking whether that child needed comforting.

Karen's testimony about defendant's naked appearance in Jane's bedroom when Jane was 10 or 11 years old significantly corresponds to Jane's allegations about how defendant abused her. Jane testified that when defendant sexually assaulted her, he would come into her room at night, and she would be awoken by him touching her. Jane had specific recollections of this occurring when she was 10 or 11 years old, while the family was living in the Villa Avenue apartment building. That Karen saw defendant, while they were living in the Villa Avenue apartment building, naked inside Jane's room in the middle of the night touching Jane's arm was fully consistent with how, where, and when Jane described defendant's abuse occurring.

Moreover, defendant's nudity on that occasion permitted a reasonable inference he harbored a lewd intent—particularly given Jane's age and the circumstances. Defendant was not merely walking around his home naked at night, as he suggests; rather, he was naked inside the bedroom of his pre-teen stepdaughter. A trier of fact could reasonably infer that, absent some dire emergency that precluded the opportunity to don any kind of clothing (of which there was no evidence), there would be no reason for defendant to be inside Jane's bedroom naked and touching her arm *other* than for a lewd intent.

The evidence of defendant's child pornography possession only strengthened the inference of lewd intent in the bedroom incident Karen witnessed, and it further corroborated Jane's allegations. Evidence of sexual misconduct admissible under Evidence Code section 1108 may be used to corroborate a victim's allegation and thereby satisfy section 803(f). (*Ruiloba, supra*, 131 Cal.App.4th at p. 682.) " '[T]he precise probative value to be accorded this evidence will depend on various considerations, such as the frequency of the [other] acts and their similarity and temporal proximity to the charged acts.' " (*Ibid*, quoting *People v. Yovanov* (1999) 69 Cal.App.4th 392, 404.)

Corroboration of the "victim's allegation" under section 803(f) to toll the statute of limitations "can, and often does, consist of a description of multiple instances

11

of abuse, often spread over years of time in the case of resident child molesters .... To the extent an uncharged act shows a defendant's *propensity* to commit sexual offenses against a child, that can corroborate *all of the charged offenses* even if it does not *particularly* corroborate any specific offense." (*Ruiloba, supra*, 131 Cal.App.4th at p. 683.) "Evidence of a person's propensity to do what the victim has alleged corroborates the victim's allegation." (*Ibid.*, citing *People v. Mabini* (2001) 92 Cal.App.4th 654, 659.)

Defendant claims the child pornography possession offenses are too temporally attenuated and substantively different from the molestation offenses to constitute clear and convincing independent corroboration. Defendant points out the sex offenses occurred more than 20 years before the child pornography offenses, and he argues child pornography possession is not sufficiently similar to the child molestation offenses to show any type of propensity or corroborative link.

Child pornography is defined broadly under section 311.11(a) as any type of information, data or image that depicts a person under the age of 18 years old engaging in or simulating "sexual conduct" as that term is defined in section 311.4, subdivision (d). (§ 311.11(a).) Material covered under that umbrella would include images or video of two 17-year-old teenagers engaged in intercourse to toddlers engaged in sexual intercourse with adults. All child pornography uniformly victimizes the minor or minors involved—and often does so repeatedly, given vast proliferation of such materials via the internet. Yet, not all child pornography encompassed by section 311.11(a)'s definition involves an adult male lewdly and sexually touching, penetrating and orally copulating (or being copulated by) a female child under the age of 15 years—which is much of the child pornography defendant possessed. It was not just the fact of defendant's conviction for child pornography possession the factfinder had available to consider as corroborating evidence–there was significant evidence of the amount and nature of the child pornography defendant possessed.

The child pornography defendant possessed mirrored the types of offenses Jane alleged defendant committed against her. Defendant possessed child pornography that exclusively depicted female children under the age of 15 years, and many of the admitted images and videos depicted female children ages six to nine years old, either being vaginally penetrated by an adult male penis or the female child was orally copulating an adult male penis. Jane described instances of defendant placing his fingers inside her vagina, rubbing his penis on her vagina and inserting it, and orally copulating her, all when she was between the ages of 10 and 15 years old. The child pornography defendant possessed was highly consistent with the sex offenses against Jane in terms of the age and gender of the victims, the age (adult) and gender of the perpetrators (male), and the types of acts committed—vaginal penetration and oral copulation.

Due to these significant parallels, the child pornography possession offenses had strong corroborative value with respect to Jane's allegations. Defendant's reliance on *People v. Earle* (2009) 172 Cal.App.4th 372 does not persuade us differently. There, the court concluded a misdemeanor indecent exposure charge could not rationally support an inference the defendant had a propensity to commit a subsequent sexual assault. (*Id.* at pp. 396–400.) The court reasoned the two sex acts were different, and the "propensity to commit one kind of act cannot be supposed, without further evidentiary foundation, to demonstrate a propensity to commit a *different* act." (*Id.* at p. 399.)

12

Unlike the differences between indecent exposure and sexual assault at issue in *People v. Earle*, there is a recognized nexus between pedophilia and child pornography. (See *People v. Memro* (1995) 11 Cal.4th 786, 864–865 [possession of child pornography evidence of the defendant's intent to molest young boys], overruled on a different ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2; see also *United States v. Brand* (2d Cir. 2006) 467 F.3d 179, 201 ["Both Congress and at least one other court have concluded that possession of child pornography signals the abnormal sexual attraction to children underlying a person's motivation to commit sexual crimes against children."], abrogated on another ground by *United States v. Cabrera* (2021) 13 F.4th 140, 147.) Beyond defendant's admission to police officers, the child pornography affirmed defendant's sexual interest in children. (See, e.g., *United States v. Bentley* (N.D.Iowa 2007) 475 F.Supp.2d 852, 858 [difference between prior sexual assaults of children and current prosecution for possessing child pornography "are not as great as they might seem at first glance" because "[t]he child pornographer, like the child rapist, displays a sexual interest in children"].) That fact is relevant to the allegation that he sexually abused a child. Moreover, the pornography established defendant had sexual interest in watching adult men sexually abuse young female children in the same way Jane alleged defendant abused her. Defendant's sexual interest in those particular acts with victims of that particular age and gender is relevant to showing a propensity to have engaged in those acts with Jane when she was a child, and is substantial evidence corroborating Jane's allegations.

Defendant argues that while courts have found a nexus between the possession of child pornography and child molestation, such as in *People v. Memro, supra*, 11 Cal.4th at pages 864 to 865, that conclusion was reached in the context of those offenses occurring simultaneously or in close temporal proximity—which is not the case here. We acknowledge there was a significant time gap between the date of the sex offenses against Jane occurring between 1991 and 1997 and the child pornography offenses in 2017, but this does not vitiate the corroborating value of the child pornography possession offense evidence in this case.

As the People point out, section 803(f) places no time limits on the independent evidence to corroborate a victim's allegation for purposes of tolling. In the context of propensity evidence under Evidence Code section 1108, courts have frequently concluded any temporal remoteness of the propensity evidence does not obviate its relevance. (See *People v. Frazier* (2001) 89 Cal.App.4th 30, 41 [uncharged offenses 15 to 16 years earlier did not make those offenses irrelevant]; see also *People v. Cordova, supra*, 62 Cal.4th at p. 133 [affirming admissibility of subsequent sex offense convictions under Evid. Code, §§ 352 and 1108, and reasoning "[t]he fact that [the] defendant committed two sex offenses against young children *after* the crime in this case permits the logical conclusion that [the] defendant had a propensity to commit sex offenses against young children earlier in his life, even if years separated the crimes" (italics added)].) Defendant acknowledges courts have observed that significant similarities between past and current offenses may balance out or offset any temporal remoteness when considering admissibility under Evidence Code sections 352 and 1108. (See *People v. Branch* (2001) 91 Cal.App.4th 274, 285.) Likewise, the significant similarity between the nature of the child pornography defendant possessed and Jane's allegations had strong corroborative value and ameliorated the time gap between Jane's molestation allegations and the possession offenses.

Finally, the child pornography defendant possessed included 32 videos and nearly 300 photo images. He had been accessing and viewing child pornography for

13

about five years before his arrest. The amount of pornography possessed and the years he accessed it support a reasonable inference defendant's sexual interest in young female children, which extended to sexual intercourse and penetration of young girls by adult men, was significant and long-standing. Under these collective circumstances, the child pornography offenses constitute substantial evidence that is relevant, probative and corroborative of Jane's allegations.

Viewing the evidence in the light most favorable to the judgment, as we are required to do (*Ruiloba, supra*, 131 Cal.App.4th at p. 682), Karen's testimony and the child pornography possession evidence together constituted substantial evidence to corroborate Jane's allegations. A rational trier of fact could conclude the prosecution met its burden of presenting substantial evidence that "clearly and convincingly" corroborated Jane's allegations (§ 803(f)(2)(C)).

Sipes, 2022 WL 334372, at *5–9 (footnotes in original).

"AEDPA . . . restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1)." Murray v. Schriro, 745 F.3d 984, 998 (9th Cir. 2014). "AEDPA's 'backward-looking language requires an examination of the state-court decision at the time it was made. It [then logically] follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.'" Id. (alteration in original) (quoting Cullen v. Pinholster, 563 U.S. 170, 182 (2011)). Accordingly, this Court will limit review to the record before the state court and will not consider the reversal of one of Petitioner's convictions for possession of child pornography that occurred after the direct appeal.[8]

---

[8] To the extent Petitioner relies on said reversed conviction to support his claim, the Court finds that such a claim is unexhausted. A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971). To provide the highest state court the necessary opportunity, the petitioner must "fairly present" the claim with "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Duncan, 513 U.S. at 365; Gray v. Netherland, 518 U.S. 152, 162–63 (1996). See also Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008) ("Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.'" (citations omitted)). The Court cannot grant habeas relief on unexhausted claims. See 28 U.S.C. § 2254(b)(1).

Further, as noted by Respondent, "it does not appear that this reversal would have limited any of the evidence at trial, as the child pornography evidence was admitted under California Evidence Code section 1108," which "does not require charges at all for the admission of the evidence," the one remaining charge "seemed to encompass all of the possessed child pornography," and thus, "Petitioner does not appear to be able to show any less evidence would have been available to the state court of appeal in its statute of limitations analysis." (ECF No. 9 at 13–14.)

1    Here, Petitioner asserts that there was insufficient evidence to corroborate the victims'
2 allegations based upon the clear and convincing evidence standard set forth in California Penal
3 Code section 803(g). (ECF No. 1 at 5.) Respondent argues that Petitioner does not allege any
4 violation of federal law and "the Ninth Circuit has held that there is no federal due process
5 protection in the standard of proof California requires for the very same tolling provision at issue
6 here," citing to Renderos v. Ryan, 469 F.3d 788, 796–97 (9th Cir. 2006). (ECF No. 9 at 14.)

7    In In Re Winship, 397 U.S. 358 (1970), the Supreme Court "explicitly h[e]ld that the Due
8 Process Clause protects the accused against conviction except upon proof beyond a reasonable
9 doubt of every fact necessary to constitute the crime with which he is charged." Id. at 364. In
10 Renderos, the Ninth Circuit held that the "findings necessary to trigger § 803(g) do not fall
11 within the due process penumbra expounded in In Re Winship, and no subsequent case has so
12 expanded it." 469 F.3d at 797. Further, other circuit courts have found that "a state court's failure
13 properly to apply a state statute of limitations does not violate due process or, indeed, any other
14 provision of the Constitution or a federal statute." Loeblein v. Dormire, 229 F.3d 724, 726 (8th
15 Cir. 2000). See also Belvin v. Addison, 561 F. App'x 684, 686 (10th Cir. 2014) ("[A] state's
16 misapplication of its own statute of limitations does not violate federal due process per se.").

17    "Petitioner fails to identify, and this Court is not aware of, any U.S. Supreme Court
18 precedent that either identifies the appropriate evidentiary standard, or even assuming the 'clear
19 and convincing evidence' standard is appropriate, defines the meaning of that standard in the
20 statute of limitations context." Sandoval v. Martel, No. 2:07-cv-00004-RSM-JLW, 2010 WL
21 3075646, at *8 (E.D. Cal. Aug. 5, 2010). "Under AEDPA, the California Court of Appeal's
22 'adjudication of [an] issue not addressed by the Supreme Court cannot be contrary to, or an
23 unreasonable application of, clearly established federal law.'" Grimes v. Phillips, 105 F.4th
24 1159, 1167 (9th Cir. 2024) (alteration in original) (quoting Stenson v. Lambert, 504 F.3d 873,
25 881 (9th Cir. 2007)). Accordingly, Petitioner is not entitled to habeas relief on his statute of
26 limitations claim, and the petition should be denied.
27 ///
28 ///

**V.**

**RECOMMENDATION**

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 8, 2024**      /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE